Ross *v.* Gould.

Ross *vs.* GOULD.

A deed, imperfectly executed by an attorney as the deed of his principal, is nevertheless admissible in evidence, in aid of the grantee's entry, to shew the extent of his claim of title.

Though a deed may be read in evidence to the jury, after the preliminary proof by the subscribing witnesses, yet if the genuineness of the instrument is in controversy, the burden of proof is still on the party producing it, to satisfy the jury, beyond a reasonable doubt, that it is genuine.

A mere mistake of the party in possession of land, as it will not constitute a disseisin, so it will not be construed into an abandonment of the possession; especially where it was caused by the owner of the fee.

THIS was a writ of entry, and was tried before *Preble J.* upon the general issue.

It appeared in evidence that in *June* 1779, one *Adam Ross* caused a certain tract of land, of which the demanded premises were parcel, to be surveyed, the lines and corners to be marked, and the courses and distances to be ascertained, the surveyor estimating and certifying the contents as two hundred acres. *Ross* entered into the tract thus surveyed, and continued in possession till his death. Soon after his decease, in *June* 1792, his two sons, *Daniel* the demandant, and *Joseph*, caused the same tract to be resurveyed, by another surveyor, who returned the same courses, distances, monuments and contents, as before. They continued in the actual possession and improvement of the land, under these surveys, till *May* 20, 1793; at which time they, with other persons in a similar situation, entered into a bond with the proprietors of *Coxhall*, for quieting the settlers, and extinguishing the title of the proprietors to the lands settled upon. The committee agreed upon by the settlers and proprietors proceeded to estimate the value of the lands possessed by *Daniel* and *Joseph Ross*, at a certain price by the acre, assuming the quantity to be two hundred acres.

It further appeared that *John Low*, *Nathaniel Conant* and *Samuel Sawyer*, agents to the proprietors of *Coxhall*, duly authorised to

Ross v. Gould.

adjust all claims with settlers, and to give deeds of the land, and who had entered, in their behalf, into the bond of *May* 20, 1793, and were themselves proprietors, proceeded, on the 10th day of *April* 1794, to give to *Daniel* and *Joseph Ross* a deed of the parcel in their possession, describing it precisely as in the surveyors' certificates of 1779 and 1792, adding the words " but more or less" to the estimated quantity of two hundred acres. To the admission of this deed in evidence, when it was offered by the demandant, the tenant objected ; but the judge admitted it to be read, as legal evidence to the jury. At the time of giving this deed, the grantees gave to the agents their joint promissory note for the sum ascertained to be due to the proprietors, for the land in their possession, computed at two hundred acres, collaterally secured by their mortgage of the same tract, by the same description. The land thus conveyed was occupied by both the grantees till *April* 1816, when *Joseph Ross* died. His widow and children continued the same occupancy and possession till *December* in the same year.

It also appeared that on the ninth day of *March* 1816, *Daniel Ross* entered into a written agreement, under seal, with *John Low*, respecting the running out of the tract ; from which, and from other evidence, it was apparent that the land was to be surveyed at the expense of *Low ;* that, the balance then due on the note aforesaid being first paid, *Low* should give a deed of one hundred acres in severalty to *Daniel Ross*, and of the other hundred acres in severalty to the heirs of *Joseph Ross ;* that the surplus quantity of land, if there should be any, should belong to *Low*, he agreeing that if there should be a deficiency in the quantity, he would make it up. During this time *Low* declared, to *Ross* and others, that the mortgage had run down, and the land was his ; and that he could keep the whole tract, the money not having been all paid ; but that he did not wish to wrong the *Rosses*, and would let them have their 200 acres, they agreeing to take that quantity, and give up the surplus. The condition of the mortgage was indeed broken ; but no entry for condition broken had ever been made, nor was the equity of redemption in any mode foreclosed. *Daniel Ross* had paid one moiety of the note, and some partial payments had been made towards the

other moiety, the residue of which was paid by the widow and heirs of *Joseph*, Dec. 26, 1816, and the note cancelled and destroyed. On the last mentioned day *Low* and *Daniel Ross* went on the land with a surveyor and chainmen, and a hundred acres, parcel of the tract, was surveyed and marked off for *Ross ;* he assisting to mark the lines and set up the monuments ; but at the same time declaring that he ought to hold by the old deed, as they had paid for the whole ; and *Low* on the contrary, claiming the whole tract as his own. · *Ross*, however, proceeded to assist in the division of the tract, and appeared satisfied with what was done ; and on the same day received from *Low* a deed of the hundred acres, more or less, so surveyed and marked off. At the same time another hundred acres of the same tract was surveyed for the widow and heirs of *Joseph Ross*, to whom a deed was given *Dec.* 27, 1816.

The residue of the tract, which constituted the demanded premises, was surveyed and marked off for *Low*, *Jan.* 1, 1817, *Daniel Ross* being present and assisting ; and it did not appear that *Ross* after that time, ever exercised any act of ownership over this surplus, or claimed any right in the same, until within three months prior to the commencement of this action.

It further appeared that *Low*, on the 28th day of *December* 1816, made a deed conveying the demanded premises to *Gould*, the tenant, who immediately entered, and had continued to occupy, till the time of trial.

The tenant also produced a paper purporting to be a deed of the same surplus, from *Daniel Ross* to *Low*, dated *Sept.* 16, 1816. Its genuineness being contested by the demandant, the usual preliminary proof of the signatures of the subscribing witnesses was adduced, they being both dead, after which the paper was read in evidence to the jury. A great variety of testimony, both direct and circumstantial, was then offered by both parties, for and against the genuineness of the paper as the deed of *Ross ;* upon which the Judge instructed the jury that the tenant having introduced the instrument purporting to be a deed from *Ross* to *Low*, and claiming under that instrument, it was not the duty of the demandant to prove it to be a forgery ; but it was the duty of the tenant to give them reasonable satisfaction that the

deed was genuine. And if he had failed thus to satisfy them upon this point, they would return their verdict for the demandant. And they did find for the demandant.

If the instructions of the Judge were erroneous, or if the law, on the facts above stated, was with the tenant, the parties agreed that the verdict should be set aside.

*N. Emery* and *E. Shepley,* for the tenant, contended that the deed, executed by the committee of the proprietors, did not convey the land to *Ross.* But this point, however, was not determined by the court.

Though *Ross* had occupied the land long enough to have acquired a title; yet he entered into an agreement to surrender the possession, assisted to mark out and designate the portion given up, which he voluntarily and absolutely abandoned, without any intention of resuming it. By this act his possessory title became forever extinct. *Ken. Prop'rs. v. Laboree* 2. *Greenl.* 283. *Small v. Porter* 15. *Mass.* 495. *Little v. Libbey* 2. *Greenl.* 244. *Klock v. Richtmyer* 16. *Johns.* 314. *Smith v. Lorilla* 10. *Johns.* 338. If it did not, yet his having seen *Gould* purchase of *Low,* erect buildings on the land, and make improvements for eight or nine years, without giving him notice of his claim of title, was a fraud, which estops him from setting up this title against this tenant.

As to the burden of proof, the jury were not properly instructed. The witnesses to the deed, and the magistrate before whom it was acknowledged, were all dead. The mode of proof, in such case, was to call one person to testify to the hand writing of one of the subscribing witnesses to the deed. Then the law presumes it to have been the deed of the grantor, and suffers it to be read in evidence to the jury. 1. *Phil. Ev.* 362, 363. It never presumes fraud, but supposes every thing morally as it should be, till the contrary is proved. 1. *Phil. Ev.* 151. The burden of proof is always on him who charges the illegality or fraud. What the law supposes, it does not permit to be controverted but by proof, to be adduced by the party who charges the fraud. *Williams v. The East India Co.* 3. *East* 199.

The tenant in the present case has not had the benefit of these

Ross v. Gould.

salutary rules. He proved the deed by one witness, and it was read to the jury as a deed presumed by the law to be the deed of the grantor. After this, the *onus probandi* was on the demandant, to show that it was a forgery; and evidence having been offered on both sides, to this point, the jury should have been instructed that it was his duty to satisfy them of its falsehood, and not that it was the duty of the tenant to prove it a genuine deed. Yet they were told that the presumption of law was against the deed.

*J. Holmes* and *Goodenow* argued for the demandant, contending at large that the deed of the proprietors' committee was sufficiently executed to pass their title; but if not, it was sufficient to convey the title of the committee; and that the mortgage of *Ross* in 1794 to the proprietors, or at least to their committee, estopped them, and their privies in estate, from setting up a title against it. But these arguments are omitted for the reason before given.

But, they argued, if the deed of the proprietors was imperfectly executed, and so void as a deed, yet it was properly admitted in evidence to show the extent of the possession and claim of the grantee. *Little v. Megquier* 3. *Greenl.* 176. *Robison v. Swett ib.* 316. *Ken. Prop'rs. v. Laboree* 2. *Greenl.* 275.

They insisted further that the vote of the proprietors, appointing *Sawyer, Low* and *Conant,* a committee to settle with the demandant, and to quiet him in his possession, might be considered as a grant to the committee for the use of the settlers; and the deed of the committee as an execution of the trust, *ut res magis valeat.*

The possession of the tenant, they said, was wholly tortious and intrusive. The proprietors had been disseised more than twenty years, and moreover a descent was cast. Their entry therefore was unlawful, and could give no right to one claiming under them. Nor could the act of *Ross,* in relinquishing his possession of the demanded premises, avail the tenant, since it was occasioned by the false representations of his grantor. The truth was, the mortgage money having been paid, and no entry for condition broken, the estate vested in the mortgagor, without a release. *Perkins v. Pitts* 11. *Mass.* 125.

As to the burden of proof, the rule is, that the party making title, must establish it by evidence. *Actori incumbit onus probandi.* 1.

Ross *v.* Gould.

*Stark. Ev.* 376. And with this agrees the rule of the civil law, *ei incumbit probatio qui discit, non qui negat.* Here the real question was, whether the tenant must make out his case, or not; and the jury were instructed that on this point he must give them reasonable satisfaction by proof. The doctrine of the other side introduces the new principle, that the conscience of the jury is to be instructed, and the burden of proof changed, by the opinion of the judge in a matter of fact. The preliminary proof, by the subscribing witnesses, is addressed to the court, not to the jury; and if it can be suffered to weigh in the decision of the question, it draws that decision to a new tribunal, not warranted by the constitution. It is not until the preliminary proof has been offered to the court, that the parties are permitted to litigate the genuineness of the deed before the jury; whose province and duty is to decide upon the whole evidence before them. *Homer v. Wallis* 11. *Mass.* 310. 1. *Phil. Ev.* [423.]

MELLEN C. J. delivered the opinion of the Court.

The case presents three questions for consideration.

1. Was the deed, signed by *Low* and others, as agents for the proprietors of *Coxhall*, properly admitted in evidence?

2. Were the instructions given by the presiding judge to the jury correct?

3. Is the law, on the facts reported, in favor of the tenant?

With respect to the first question, we would observe that the ground on which our decision is placed renders it unnecessary for us to decide whether the deed was so executed by the agents, as to pass the fee of the estate therein described to *Daniel* and *Joseph Ross.* If it was, and if the verdict in favor of the demandant was found under correct and legal instructions from the court, it is perfectly clear that the demandant has a right to retain the verdict; but if it was not, still it was admissible to shew the nature and extent of the claim of the grantees under the deed, which was registered in *February* 1795, the year after its execution. The report states that the judge admitted the deed "as legal evidence to the jury." It certainly was such, and therefore the first objection is of no importance.

The next inquiry is, whether the instructions were correct as to the *onus probandi*. On this point the argument of the counsel for the tenant is specious, and has been ingeniously urged, but we are perfectly satisfied that it possesses no intrinsic merit. It is a general, if not a universal rule, that the burden of proof rests on him who has the affirmative of a proposition. Hence a plaintiff must prove his declaration; the *onus probandi* is on him; but if the defendant admits the facts alleged against him, but pleads and relies on another fact, as a bar to the action, then he must prove this fact; the *onus probandi* is thrown upon him. In the case at bar the tenant introduced the deed from *Daniel Ross* to *Low*, the execution of which was denied by the demandant. The tenant thereby affirmed it to be the demandant's deed; and of course the burden of proof was on him. To a certain extent his counsel admits the principle; but he contends that as soon as he had offered evidence of the execution, though of a *prima facie* character, sufficient to authorise him to read it to the jury, he had, by so doing, thrown the *onus probandi* upon the demandant, to disprove the execution, and satisfy the jury that it was not his deed. The true answer to this course of reasoning is, that nothing is to be admitted to the jury without the sanction of an oath, unless by consent, express or implied. A promissory note, offered in support of a declaration upon it, may be read to the jury without any preliminary proof, if the defendant consents to it; this is the case of express consent. If the nature of a plea in bar be such as not to deny the genuineness of the contract declared on, as for instance, the plea of general performance, or the plea of seisin at the time of making the covenant alleged, or the plea of payment, or release; these are cases of implied consent; and for the reasons above mentioned the contract declared on may be read to the jury without any proof of execution. But not so when the issue is upon the plea of *non est factum*; there must then be some *prima facie* proof offered, to justify the court in permitting the contract to be read to the jury in evidence, and submitted to their consideration. And the same principle applies if the contract be offered in evidence, and is denied. When it is so admitted, the jury are the proper and constitutional tribunal to decide the question

whether the contract be genuine, or not. In the examination of the contested fact, the *onus probandi* may, in the course of a trial, be thrown from one party upon the other several times, according as the complexion of the proof may change. But when it is said, as was stated by the judge at the trial, that the *onus probandi* is on the party who offers a paper as a genuine deed under which he claims, the plain sound common sense and legal meaning is, that it has reference to all the evidence in the cause respecting the alleged genuineness of the contested paper ; or, in other words, it means that the party affirming the paper or instrument to be genuine, must furnish to the jury so much evidence as to leave a balance of proof in favor of the genuineness of the instrument, after making all due allowance for the influence of the proof adduced on the other side to produce a different conviction in the minds of the jury. The application of these plain principles shows, most manifestly, that the instructions of the judge to the jury were perfectly correct.

Having thus disposed of the second objection, we would repeat the observation that we made in considering the first objection, namely, that if the agent's deed did convey the estate to the grantees, then of course the tenant has no possible ground of defence. But in considering the third question, we will proceed upon the principle that no legal estate passed by the deed, without giving any opinion on the point. In this view of the subject, *Daniel* and *Joseph Ross* must be considered as entering upon the lands described in the deed wrongfully, and by causing the deed under which they claimed to hold, to be registered in *February* 1795, they are to be considered disseisors of the proprietors, as to those lands, and to have continued such disseisin until the 9th of *March* 1816, without a question, according to repeated decisions of this court. *Little v. Megquier* 2, *Greenl.* 276. *Robinson v. Swett & al.* 3. *Greenl.* 316, and *Proprietors of Kennebec Purchase v. Laboree* 2. *Greenl.* 275, and the cases there cited. But it has been contended that by means of the agreement made between *Low* and the demandant on the 9th of *March* 1816, the disseisin and all its effects were done away, and the possession of the demanded premises abandoned, or surrendered. It is clear the agreement was not intended as a conveyance by the

Ross *v.* Gould.

demandant to *Low*, but only as a preparatory arrangement, and that a deed was contemplated to be given in pursuance of it; but the jury have found that what the tenant relied on as the contemplated deed was not proved to their satisfaction to have been executed by the demandant; and that it was not his deed. The question then is whether there was any voluntary abandonment of the possession by the demandant, doing away the effects of his disseisin of the proprietors. A disseisin cannot be committed by mistake; *Gay v. Brown* 3. *Greenl.* 126; because the intention of the possessor to claim adversely is an essential ingredient in a disseisin; and for the same reason mere mistake will not constitute an abandonment of possession; and much less if such arrangements as were made, were the consequence of false representations by a party interested. The report shews that the demandant acted under the influence of the misrepresentations made by *Low* in relation to the mortgage; he assuring them that in virtue of such mortgage he had the absolute ownership of all the premises mortgaged, though he was willing to yield up a part on the terms proposed. Now the fact was that no estate had become absolute in *Low*, he never having entered to foreclose the mortgage; and though on the 26th of *December* 1816, the balance due on the mortgage was paid by the heirs of *Joseph Ross*, yet, on that very day, *Low* declared that all the land was his, when conversing with the demandant. We cannot consider these transactions as amounting to an abandonment of the possession of the premises, of which the tenant can avail himself, to any advantage. The effect of the disseisin then, not being done away, nor the possession of the demandant changed, under circumstances prejudicial to his possessory rights, we have only to compare the possessory titles of the parties; and the demandant's, being the elder, is the better title. We are all of opinion that there must be

*Judgment on the verdict.*