GEORGE F. HITCHINGS *vs.* JOHN W. C. MORRISON.

Cumberland. Opinion June 7, 1881.

*Real estate. Title by prescription.*

J owning a lot of land on the south side of Green street, in P, with a frontage of one hundred and twenty-six feet, conveyed a piece thereof with a frontage of sixty feet to the defendant, the latter supposing that by the terms of his deed, his lot extended to a certain fence which would give him a frontage of sixty-six feet. Soon after the delivery of his deed, the defendant entered, occupied and cultivated the lot to the fence for more than twenty consecutive years; *Held*, that if the defendant claimed title to the fence during his entire occupation, his title ripened into an absolute title by disseizin, although he was mistaken as to the true bound.

ON MOTION to set aside the verdict.

Writ of entry to recover a lot of land in Portland.

The facts are stated in the opinion.

*Webb and Haskell*, for the plaintiff.

Manifestly the conveyances give the demandant a title to the land demanded, and the tenant can prevail only upon proof of a disseizin by himself of the demandant for at least twenty years.

The law of this State is said to be that "a man claiming title only to a specified line, capable of being ascertained, cannot, by ignorantly having possession up to another line, acquire a title by disseizin to land lying between the two which he does not intentionally claim." *Worcester v. Lord*, 56 Maine, 265 ; *Dow v. McKenney*, 64 Maine, 138.

The line of the tenant's south-easterly limit was fixed in his title deed as sixty feet from and parallel to the Gould land. This line is capable of being ascertained upon the surface of the ground without mistake or chance for question, and its actual location was, in fact, not in dispute at the trial. The Gould line was well known and recognized by both parties.

The tenant testified, that he moved on to the premises in May, 1856; that he did not then take any steps to ascertain the point at which sixty feet from the Gould line would terminate; that the first time he learned that his deed did not reach up to the fence (which was sixty-six feet beyond the Gould line) was a year ago, and that prior to that time he had the impression that the fence was the line, and that whatever he did was done under that belief; that after he moved upon the premises he discovered a sink spout emptying on the land, and told Jose he should charge him a nominal fee for the same, at which Mr. Jose did not seem pleased; that Jose did not promise or agree to cut it off.

H. N. Jose, called by tenant, testified: "At the time I sold tenant his land, I did not know whether the lot, as inclosed, contained more than sixty feet. I sold sixty feet. From that time to the time of this controversy, I never knew where, on the face of the earth, sixty feet from the Gould line would be. I made no point about the fences, as I owned the whole property. I put no stake down at the time I sold to Morrison."

Jose being the owner of one hundred and sixty feet southeast of the Gould land, by selling sixty feet thereof to the tenant, did not thereby surrender or abandon his possession of the remaining one hundred feet, but continued it, both in fact and in law, and the demandant, claiming title thereto under him, should have the same adjudged in his favor in this action.

*Ardon W. Coombs*, for the defendant.

VIRGIN, J. In 1823, Sarah T. Chase conveyed to Nathan Babcock a rectangular parcel of land, situated on the west side of Green street, in Portland, four rods wide on the street and extending back nine and one-half rods, with a dwelling house upon it. On the south line of the lot was a fence and two or

three feet north of the fence, a row of ash trees now standing.

In 1825, John Mussey conveyed to Babcock another rectangular lot, adjoining the former on the south, and separated therefrom by the fence, with a frontage of sixty feet and extending as far back as the other.

In 1845, Benj. Dodge conveyed to Barnabas Palmer another lot adjoining the second on the south, having a frontage of thirty-three feet.

In April, 1856, H. N. Jose, having previously obtained the title to all these parcels of land, conveyed to the defendant a part of the first, to wit, sixty feet in width, measuring from its northern boundary on the street, southerly, thus leaving the strip of land between the southern boundary of the land thus conveyed, and the fence, six feet in width and one hundred and fifty-seven feet in length, not covered by the deed. Subsequently, the title to the remainder of the three lots, including the six feet strip, came by sundry mesne conveyances to the plaintiff, who now seeks to recover possession of the narrow strip.

The defendant claims title to the land in controversy by disseizin based upon adverse possession of more than twenty-two years prior to the commencement of the plaintiff's action in December, 1878.

The defendant proved that in May, 1856, he moved into the dwelling house, standing upon the land covered by his deed, and took possession of the lot as it was inclosed, occupying, cultivating and improving the land to the fence, having no suspicion that his deed did not include the whole lot that was conveyed to Babcock; that he and his lessees have been in the sole and continuous occupation, and improvement of the disputed strip ever since; and that nobody ever questioned or interfered with his open and notorious possession, until the fall of 1878, when the plaintiff undertook to erect a fence upon the north line of the narrow strip, but was prevented by the defendant's lessee, thus making out a *prima facie* case of disseizin. R. S., c. 105, § 10; *Worcester* v. *Lord*, 56 Maine, 265, 270.

The plaintiff did not deny these facts, but contended that the defendant's possession was not adverse in its character, that it

was neither taken nor held with the intention of asserting title to land not included in his deed, but on the contrary, that it was under a mistaken belief that his title extended clear to the fence. This was the principal question submitted to the jury, who, under instructions to which no exceptions have been taken, found the issue in behalf of the defendant. And now the plaintiff most earnestly contends upon the authority of *Worcester* v. *Lord*, *supra* and *Dow* v. *McKenney*, 64 Maine, 138, that the verdict ought to be set aside.

No question is raised as to the extent, duration or continuity of the defendant's occupation. If it was not accompanied by a claim of title, in fact, but was merely inadvertence or mistake as to the extent of his land, without intention to claim title to the extent of his occupation, but only to the bounds described in his deed, then the verdict is against law. *Lincoln* v. *Edgecomb*, 31 Maine, 345; *Abbott* v. *Abbott*, 51 Maine, 584; *Worcester* v. *Lord*, *supra*, and the earlier cases therein cited; *Dow* v. *McKenney*, 64 Maine, 138. But if, on the contrary, he did claim title clear to the fence which was not on the true line as described in his deed, although he by mistake supposed it was, the verdict is not against law. *Abbott* v. *Abbott*, *supra*. If, however, the evidence is not sufficient to warrant the jury in finding such claim of title, then the verdict is against evidence, and should be set aside for that cause; otherwise there should be judgment on the verdict.

We think the verdict must stand. The undisputed evidence on the part of the defendant is, that he and his grantor, at the latter's solicitation, "went together to look at" "the Babcock house and lot," with a view of the defendant's purchasing it; the grantor "showed him over the premises and house;" that they walked about the lot which was inclosed on the southerly side the same as now; that nothing was said about the width of the lot, and the defendant did not know the width, but supposed he bargained for the whole lot; that the conveyance followed in a few days; that he entered into possession in May following; cultivated a vegetable garden in the back part of the lot and a flower garden in the front, both up to the fence; that in 1857,

discovering a drain or spout discharging water into the disputed land from a house on the adjoining lot belonging to the grantor, the defendant called the former's attention to it and told him he "should have to charge him a nominal fee for entering his premises to prevent his acquiring a right;" that the grantor did not assert any right and did not seem pleased with the suggestion, but that the drain was soon discontinued; that several years afterwards, the defendant saw the grantor's tenant opening a cess-pool on the disputed territory which the defendant "forbade and it was stopped," etc. From these facts, we think the jury were warranted in finding the defendant was claiming a title commensurate with his occupation, notwithstanding his mistaken view as to the boundary in his deed. This view does exact justice to all concerned.

> *Motion overruled.*
> *Judgment on the verdict.*

APPLETON, C. J., WALTON, BARROWS, LIBBEY and SYMONDS, JJ., concurred.