ISRAEL J. PREBLE, and another,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Sagadahoc.   Opinion January 17, 1893.

*Disseizin.   Adverse Possession.*

One who by mistake occupies for twenty years, or more, land not covered by his deed, with no intention to claim title beyond his actual boundary, wherever that may be, does not thereby acquire title by adverse possession to land beyond the true line.

In case of occupancy by mistake beyond a line capable of being ascertained, the intention to claim title to the extent of the occupancy must appear to be absolute and not conditional; otherwise the possession will not be deemed adverse to the true owner.

It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines the question of disseizin.

ON REPORT.

This was a real action brought to determine the dividing line between adjoining owners.

The case is stated in the opinion.

A principal issue between the parties was that of adverse occupation, the plaintiff claiming that thereby he had acquired a title to the disputed premises. The testimony bearing upon this issue and coming from the plaintiff's cross-examination, is as follows :—

" Q. Previous to your deed to the railroad of the two rod strip between you and them, was there anything to mark the western boundary of their location ? A. Yes, there was a fence on their western boundary. Then they took two rods more and moved the fence. I deeded it to them.

" Q. It was your understanding and also the understanding of the railroad company that the fence was moved back to correspond with the new line ? A. Yes, sir.

" Q. Your occupation ever since has been based upon that understanding and supposition, has it not ? A. I always supposed that was the line.

" Q. When you made your deed to the railroad company of the two-rod strip, and then occupied afterwards up to this fence, you did not intend thereby to encroach on the land which you had just deeded to the railroad ? A. I supposed I was using my own land. I moved the fence in at one time two feet.

" Q. Down to the time when you moved it in yourself, the fence was kept as it was put up shortly after the deed of the two-rod strip ? A. They told me they had taken two rods.

" Q. How long after you delivered to the railroad company your deed of the two-rod strip was the fence moved back to correspond to the new line ? A. The fence was moved back before I gave the deed ; it was within that year. I was away at sea ; when I came home they told me they had taken it.

" Q. From that time since you have regarded the fence line as the true line ? A. I have.

" Q. And occupied up to it on that account and on that ground ? A. Occupied it on account I thought it was my own land."

*Spaulding and Buker*, for plaintiffs.

Plaintiffs' occupancy continued for more than twenty years, was open, notorious, adverse and exclusive, and such as to give him title and right of possession whether the fence was or is on the true line or not. R. S., c. 105, § 10; *Martin* v. *Me. Cent. Railroad Co.* 83 Maine, 100; *Hitchings* v. *Morrison*, 72 Maine, 331; *Traip* v. *Traip*, 57 Maine, 268; *Abbott* v. *Abbott*, 51 Maine, 575. It is not a case where the plaintiffs' occupancy was not accompanied by a claim of title in fact and without intention to claim title to the extent of his occupation as suggested in the opinion of the court in *Hitchings* v. *Morrison, supra*; but on the contrary he did claim title clear to the fence regardless of whether there had been a mistake in the original location of the fence, and which we do not admit there was.

*Baker, Baker and Cornish*, for defendant.

Counsel cited, besides the cases in the Maine Reports, the following authorities : *Hamilton* v. *West*, 63 Mo. 93; *French* v. *Pearce*, 8 Conn. 439; *Spaulding* v. *Warren*, 25 Vt. 316; *Tamm* v. *Kellogg*, 49 Mo. 93; *Walbrunn* v. *Batten*, 68 Mo. 164; *Doe* v. *Long*, 64 N. C. 433; *St. Louis Univ.* v. *McConn*, 28 Mo. 481; *Grube* v. *Wells*, 34 Iowa, 148; *Skinner* v. *Crawford*, 54 Iowa, 119; *Howard* v. *Reedy*, 29 Ga. 154; *Delano* v. *Bartlett*, 6 Cush. 364; *Central Bridge* v. *Butler*, 2 Gray, 130; *Nichols* v. *Munsel*, 115 Mass. 567.

WHITEHOUSE, J.   In this writ of entry the plaintiffs seek to recover a small piece of land, triangular in shape, now covered by a portion of the defendant's freight platform at the Richmond station.   The case is presented on report and discloses no material controversy respecting the facts.   The rights of the parties must, therefore, be determined by applying the established principles of law to the fair and reasonable inferences drawn from the facts proved or admitted.

The original location of the defendant's railroad in 1848 was made four rods in width at the point in question, its westerly boundary being the easterly line of the premises then owned by the plaintiff's father.   But in 1852 the company purchased of

the plaintiffs, who had in the meantime acquired title to the property, an additional strip two rods in width, extending across their lot, and adjoining the original location on the westerly side. At the same time the fence which had been erected on the supposed boundary line in 1848, was moved westerly by the defendant's servants for the purpose of enclosing the two rods then purchased ; but the plaintiff, Israel Preble, testifies that in re-building the fence in " 1864 or 1866 " he moved it two feet further on to his own land. Prior to 1889 the defendants had used only a part of this additional strip, and hence there had been no occasion for an accurate survey of the land. But when at the last named date, it became necessary to enlarge the freight platform, measures were taken to have the boundary line between the parties definitely ascertained and fixed. It was then discovered from the record of the original location that the " central or directing line " of the railroad was not in the centre of the four rods of land taken for the construction of the road, but was twenty-eight feet from the easterly line and thirty-eight feet from the westerly line of the location. It accordingly appeared that the true boundary of the defendant's land on the west was thirty-eight feet and two rods or seventy-one feet from the centre of the main track of the railroad. By this measurement the boundary line was found to be west of the existing fence a distance of two feet and eight-tenths at the southerly end and eight feet and ten inches at the northerly end. Whether the mistake made by the defendant's servants respecting the distance the fence should have been moved in 1848, arose in part from an erroneous assumption that the central line of the track was the center of the location, or otherwise, does not appear, and it is not material to inquire. There is not only no evidence that the main track has been moved at this point since the original location but it is satisfactorily shown that it has not been moved ; and the simple process of drawing a line seventy-one feet westerly from the centre of the main track and parallel with it now establishes beyond a doubt the location of the westerly line of the two-rod strip. The triangular piece in controversy is thus conclusively shown to be wholly on the east.

side of the true line, and hence a part of the land purchased of the plaintiffs in 1852.

But Israel Preble, the surviving plaintiff, claims that he cannot at this date satisfactorily locate his easterly line by measurement; and says that he has continually occupied the land to the fence as it existed in 1889 upon the understanding and belief that it marked the true line, and he now claims title to the disputed piece by adverse possession. And the question is, can this claim on the part of the plaintiff be sustained on the facts here presented? Clearly not, unless the rule established by an unbroken line of the decisions of this court covering a period of nearly seventy years, is now to be overturned. That rule is that one who by mistake occupies for twenty years, or more, land not covered by his deed with no intention to claim title beyond his actual boundary wherever that may be, does not thereby acquire title by adverse possesion to land beyond the true line. *Brown* v. *Gay*, 3 Maine, 126; *Ross* v. *Gould*, 5 Maine, 204; *Lincoln* v. *Edgecomb*, 31 Maine, 345; *Worcester* v. *Lord*, 56 Maine 266; *Dow* v. *McKenney*, 64 Maine, 138.

We are aware that the soundness of this doctrine has been questioned in other jurisdictions. It has been said that the possession is not the less adverse because the person possessed intentionally though innocently; and the further objection has been made that it introduces a new principle by means of which the stable evidence of visible possession under a claim of right, is complicated with an inquiry into the invisible motives and intentions of the occupant. *Pearce* v. *French*, 8 Conn. 439; Wood on Limitations, § 263, and authorities cited. It is manifest, however, that those holding these views have not critically distinguished the decisions of our court upon the subject, and hence have failed to apprehend their true import and exact limitations.

A frequent recurrence to elementary truths in any science is the greatest safeguard against error, and in the ultimate analysis of the doctrine of adverse possession the distinctive element which supports the rule above stated at once becomes apparent. Indeed it is aptly suggested in the familiar test imposed by

Bracton : " *Quœrendum est a judice quo animo hoc fecerit.*" Co. Litt. 153 b; 8 Mod. Rep. 55. The inquiry must be *quo animo* is the possession taken and held.

There is every presumption that the occupancy is in subordination to the true title, and if the possession is claimed to be adverse the act of the wrong-doer must be strictly construed, and the character of the possession clearly shown. *Roberts* v. *Richards*, 84 Maine, 1, and authorities cited. "The intention of the possessor to claim adversely," says MELLEN, C. J., in *Ross* v. *Gould, supra,* "is an essential ingredient in disseizin." And in *Worcester* v. *Lord, supra,* the court says : "To make a disseizin in fact there must be an intention on the part of the party assuming possession to assert title in himself." Indeed the authorities all agree that this intention of the occupant to claim the ownership of land not embraced in his title, is a necessary element of adverse possession. And in case of occupancy by mistake beyond a line capable of being ascertained, this intention to claim title to the extent of the occupancy must appear to be absolute and not conditional; otherwise the possession will not be deemed adverse to the true owner. It must be an intention to claim title to all land within a certain boundary on the face of the earth, whether it shall eventually be found to be the correct one or not. If for instance one in ignorance of his actual boundaries takes and holds possession by mistake up to a certain fence beyond his limits, upon the claim and in the belief that it is the true line, with the intention to claim title, and thus if necessary, to acquire "title by possession" up to that fence, such possession having the requisite duration and continuity, will ripen into title. *Hitchings* v. *Morrison,* 72 Maine 331, is a pertinent illustration of this principle. See also, *Abbott* v. *Abbott,* 51 Maine, 575 ; *Ricker* v. *Hibbard,* 73 Maine, 105.

If on the other hand a party through ignorance, inadvertence or mistake, occupies up to a given fence beyond his actual boundary, because he believes it to be the true line, but has no intention to claim title to that extent if it should be ascertained that the fence was on his neighbor's land, an indispensable

element of adverse possession is wanting. In such a case the intent to claim title exists only upon the *condition* that the fence is on the true line. The intention is not absolute, but provisional, and the possession is not adverse. *Dow* v. *McKenney*, 64 Maine, 138, is an excellent illustration of this rule. In that case a fence had been maintained on a wrong divisional line by mistake, and it was found by the court as a matter of fact that "none of the parties had any idea of maintaining any line but the true divisional line and that they occupied according to the fence only because they supposed it was on the true divisional line between them." Upon this finding it was held as a matter of law that such possession was not adverse to the right of the true owner. The unconditional intent to claim title to the extent of the occupancy was wanting. See also, *Worcester* v. *Lord*, 56 Maine, 266.

Thus it is perceived that possession by mistake as above described may or may not work a disseizin. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines the question of disseizin. The two rules are expressly recognized and carefully distinguished in our recent decisions. The distinction between them is neither subtle, recondite or refined, but simple practical and substantial. It involves sources of evidence and means of proof no more difficult or complex than many other inquiries of a similar character constantly arising in our courts.

The conclusions of fact which are fairly warranted by the evidence leave no room for doubt that the case at bar falls within the principle last stated. It has already been seen that, prior to 1889, both parties were ignorant of the fact that the fence erected by the plaintiff in "1864 or 1866" was not on the true line. The plaintiff, Israel Preble, himself testifies that after he moved the fence he had always regarded it as the true line; that he had occupied the land up to the fence upon the supposition and belief that it was the true line and that he had so occupied it because he thought it was his own land. This testimony, viewed in the light of the circumstances and situation

of the parties, emphatically negatives the idea that during this time the plaintiff had any intention to claim title to land which did not belong to him. We are warranted in believing that it would do injustice to the plaintiff himself, as well as violence to all the probabilities in the case, to assume that immediately after the plaintiff had conveyed the land to the defendant for a satisfactory consideration, he formed the intention of depriving the company of a portion of the same land by disseizin in case the fence should not prove to be on the true line.

The conclusion is irresistible that the plaintiff held possession of the locus by mistake in ignorance of the true line, with an intention to claim title only on condition that the fence was on the true line. His possession was, therefore, not adverse to the true owner, and cannot prevail against the valid record title of the defendant.

*Judgment for the defendant.*

PETERS, C. J., WALTON, VIRGIN and HASKELL, JJ., concurred. EMERY, J., did not concur.