FRED MANNILLO AND ALICE MANNILLO, PLAINTIFFS-RESPONDENTS, v. MARGARET GORSKI, DEFENDANT-APPELLANT.

Argued January 21, 1969—Decided July 7, 1969.

Mr. *Stanley Yacker* argued the cause for respondents (*Mr. George E. Ostrov,* attorney).

Mr. *Theodore D. Parsons, Jr.* argued the cause for appellant (*Messrs. Parsons, Canzona, Blair & Warren,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. Plaintiffs filed a complaint in the Chancery Division seeking a mandatory and prohibitory injunction against an alleged trespass upon their lands. Defendant counterclaimed for a declaratory judgment which would adjudicate that she had gained title to the disputed premises by adverse possession under *N. J. S.* 2A:14–6 which provides:

"Every person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter."

After plenary trial, judgment was entered for plaintiffs. *Mannillo v. Gorski,* 100 *N. J. Super.* 140 (*Ch. Div.* 1968). Defendant appealed to the Appellate Division. Before argument there, this Court granted defendant's motion for certification. *R. R.* 1:10–1A.

The facts are as follows: In 1946, defendant and her husband entered into possession of premises in Keansburg known as Lot No. 1007 in Block 42, under an agreement to purchase. Upon compliance with the terms of said agreement, the seller conveyed said lands to them on April 16, 1952. Defendant's husband thereafter died. The property consisted of a rectangular lot with a frontage of 25 feet and a depth of 100 feet. Plaintiffs are the owners of the adjacent Lot 1008 in Block 42 of like dimensions, to which they acquired title in 1953.

In the summer of 1946 Chester Gorski, one of the defendant's sons, made certain additions and changes to the defendant's house. He extended two rooms at the rear of the structure, enclosed a screened porch on the front, and put a concrete platform with steps on the west side thereof for use in connection with a side door. These steps were built to replace existing wooden steps. In addition, a concrete walk

was installed from the steps to the end of the house. In 1953, defendant raised the house. In order to compensate for the resulting added height from the ground, she modified the design of the steps by extending them toward both the front and the rear of the property. She did not change their width.

Defendant admits that the steps and concrete walk encroach upon plaintiffs' lands to the extent of 15 inches. She contends, however, that she has title to said land by adverse possession. *N. J. S. A.* 2A:14–6, quoted above. Plaintiffs assert contrawise that defendant did not obtain title by adverse possession as her possession was not of the requisite hostile nature. They argue that to establish title by adverse possession, the entry into and continuance of possession must be accompanied by an intention to invade the rights of another in the lands, *i. e.,* a knowing wrongful taking. They assert that, as defendant's encroachment was not accompanied by an intention to invade plaintiffs' rights in the land, but rather by the mistaken belief that she owned the land, and that therefore an essential requisite to establish title by adverse possession, *i. e.,* an intentional tortious taking, is lacking.

The trial court concluded that defendant had clearly and convincingly proved that her possession of the 15-inch encroachment had existed for more than 20 years before the institution of this suit and that such possession was "exclusive, continuous, uninterrupted, visible, notorious and against the right and interest of the true owner." There is ample evidence to sustain this finding except as to its visible and notorious nature, of which more hereafter. However, the judge felt impelled by existing New Jersey case law, holding as argued by plaintiffs above, to deny defendant's claim and entered judgment for plaintiffs. 100 *N. J. Super.,* at 150. The first issue before this Court is, therefore, whether an entry and continuance of possession under the mistaken belief that the possessor has title to the lands involved, exhibits the requisite hostile possession to sustain the obtaining of title by adverse possession.

The first detailed statement and acceptance by our then highest court, of the principle that possession as an element of title by adverse possession cannot be bottomed on mistake, is found in *Folkman v. Myers*, 93 *N. J. Eq.* 208 (*E. & A.* 1921), which embraced and followed that thesis as expressed in *Myers v. Folkman*, 89 *N. J. L.* 390 (*Sup. Ct.* 1916). It is not at all clear that this was the common law of this State prior to the latter case. An earlier opinion, *Davok v. Nealon*, 58 *N. J. L.* 21 (*Sup. Ct.* 1895), held for an adverse possessor who had entered under the mistaken belief that he had title without any discussion of his hostile intent. However, the court in *Myers v. Folkman, supra,* at *p.* 393, distinguished *Davock* from the case then under consideration by referring to the fact that "Charles R. Myers *disclaims* any intent to claim what did not belong to him and apparently never asserted a right to land outside the bounds of his title * * *." (Emphasis supplied) The factual distinction between the two cases, according to *Myers,* is that in the later case there was not only an entry by mistake but also an articulated disclaimer of an intent by the entrant to claim title to lands beyond his actual boundary. *Folkman,* although apparently relying on *Myers,* eliminated the requirement of that decision that there be expressed an affirmative disclaimer, and expanded the doctrine to exclude from the category of hostile possessors those whose entry and continued possession was under a mistaken belief that the lands taken were embraced within the description of the possessor's deed. In so doing, the former Court of Errors and Appeals aligned this State with that branch of a dichotomy which traces its genesis to *Preble v. Main Cent. R. Co.,* 85 *Me.* 260, 27 *A.* 149, 21 *L. R. A.* 829 (*Sup. Jud. Ct. Me.* 1893) and has become known as the Maine doctrine. In *Preble,* the court said at 27 *A.,* at *p.* 150:

"There is every presumption that the occupancy is in subordination to the true title, and, if the possession is claimed to be adverse, the act of the wrongdoer must be strictly construed, and the character of the possession clearly shown. Roberts v. Richards, 84

Me. 1, 24 A. 425, and authorities cited. 'The intention of the possessor to claim adversely," says Mellen, C. J., in Ross v. Gould, supra, [5 Me. 204], 'is an essential ingredient in disseisin.' And in Worcester v. Lord, supra [56 Me. 266], the court says: 'To make a disscisin in fact, there must be an intention on the part of the party assuming possession to assert title in himself.' Indeed, the authorities all agree that this intention of the occupant to claim the ownership of land not embraced in his title is a necessary element of adverse possession; and in case of occupancy by mistake beyond a line capable of being ascertained this intention to claim title to the extent of the occupancy must appear to be absolute, and not conditional; otherwise the possession will not be deemed adverse to the true owner. It must be an intention to claim title to all land within a certain boundary on the face of the earth, whether it shall eventually be found to be the correct one or not. If, for instance, one in ignorance of his actual boundaries takes and holds possession by mistake up to a certain fence beyond his limits, upon the claim and in the belief that it is the true line, with the intention to claim title, and thus, if necessary, to acquire 'title by possession' up to that fence, such possession, having the requisite duration and continuity, will ripen into title. Hitchings v. Morrison, 72 Me. 331, is a pertinent illustration of this principle. See, also, Abbott v. Abbott, 51 Me. 575; Ricker v. Hibbard, 73 Me. 105.

If, on the other hand, a party through ignorance, inadvertence, or mistake occupies up to a given fence beyond his actual boundary, because he believes it to be the true line, but has no intention to claim title to that extent if it should be ascertained that the fence was on his neighbor's land, an indispensable element of adverse possession is wanting. In such a case the intent to claim title exists only upon the condition that the fence is on the true line. The intention is not absolute, but provisional, and the possession is not adverse."

This thesis, it is evident, rewards the possessor who entered with a premeditated and predesigned "hostility" — the intentional wrongdoer and disfavors an honest, mistaken entrant. 3 *American Law of Property (Casner ed.* 1952), § 104, *pp.* 773, 785; Bordwell, "Disseisin and Adverse Possession," 33 *Yale L. J.* 1, 154 (1923); Darling, "Adverse Possession in Boundary Cases," 19 *Ore. L. Rev.* 117 (1940); Sternberg, "The Element of Hostility in Adverse Possession," 6 *Temp. L. Q.* 206 (1932); Annotation, "Adverse possession involving ignorance or mistake as to boundaries — modern views," 80 *A. L. R. 2d* 1171 (1961).

The other branch of the dichotomy relies upon *French v. Pearce,* 8 *Conn.* 439 (*Sup. Ct. Conn.* 1831). The court said

in *Pearce* on the question of the subjective hostility of a possessor, at *pp.* 442, 445–446:

"Into the recesses of his [the adverse claimant's] mind, his motives or purposes, his guilt or innocence, no enquiry is made. * * *
* * * The very nature of the act [entry and possession] is an assertion of his own title, and the denial of the title of all others. It matters not that the possessor was mistaken, and had he been better informed, would not have entered on the land." 8 *Conn.* at 442, 445–46.

The Maine doctrine has been the subject of much criticism in requiring a knowing wrongful taking. The criticism of the Maine and the justification of the Connecticut branch of the dichotomy is well stated in 6 *Powell, Real Property* (1969) ¶ 1015, *pp.* 725–728:

"Do the facts of his possession, and of his conduct as if he were the owner, make immaterial his mistake, or does such a mistake prevent the existence of the prerequisite claim of right. The leading case holding the mistake to be of no importance was *French v. Pearce*, decided in Connecticut in 1831. * * * This viewpoint has gained increasingly widespread acceptance. The more subjectively oriented view regards the 'mistake' as necessarily preventing the existence of the required claim of right. The leading case on this position is *Preble v. Maine Central R. R.*, decided in 1893. This position is still followed in a few states. It has been strongly criticized as unsound historically, inexpedient practically, and as resulting in better treatment for a ruthless wrongdoer than for the honest landowner. * * * On the whole the law is simplified, in the direction of real justice, by a following of the Connecticut leadership on this point."

Again, 4 *Tiffany, Real Property* (*3d ed.* 1939), § 1159, *pp.* 474–475, criticizes the employment of mistake as negating hostility as follows:

"* * * Adopting this view, it is only in so far as the courts, which assert the possible materiality of the mistake, recognize a contrary presumption, of an intention on the part of the wrongful possessor not to claim title if he is mistaken as to the boundary, that the assertion of the materiality of mistake as to boundary becomes of substantial importance. That the presumption is properly in favor of

the adverse or hostile character of the possession rather than against it has been previously argued, but whatever presumption in this regard may be recognized, the introduction of the element of mistake in the discussion of the question of adverse possession is, it is submitted, unnecessary and undesirable. In no case except in that of a mistake as to boundary has the element of mistake been regarded as having any significance, and there is no reason for attributing greater weight thereto when the mistake is as to the proper location of a boundary than when it is a mistake as to the title to all the land wrongfully possessed. And to introduce the element of mistake, and then limit its significance by an inquiry as to the intention which the possessor may have as to his course of action in case there should be a mistake, an intention which has ordinarily no existence whatsoever, is calculated only to cause confusion without, it is conceived, any compensating advantage."

Our Appellate Division in *Predham v. Holfester,* 32 *N. J. Super.* 419 (*App. Div.* 1954) although acknowledging that the Maine doctrine had been severely criticized felt obliged because of *stare decisis* to adhere thereto. See also *Rullis v. Jacobi,* 79 *N. J. Super.* 525, 528 (*Ch. Div.* 1963).

We are in accord with the criticism of the Maine doctrine and favor the Connecticut doctrine for the above quoted reasons. As far as can be seen, overruling the former rule will not result in undermining any of the values which *stare decisis* is intended to foster. The theory of reliance, a cornerstone of *stare decisis,* is not here apt, as the problem is which of two mistaken parties is entitled to land. Realistically, the true owner does not rely upon entry of the possessor by mistake as a reason for not seeking to recover possession. Whether or not the entry is caused by mistake or intent, the same result eventuates — the true owner is ousted from possession. In either event his neglect to seek recovery of possession, within the requisite time, is in all probability the result of a lack of knowledge that he is being deprived of possession of lands to which he has title.

Accordingly, we discard the requirement that the entry and continued possession must be accompanied by a knowing intentional hostility and hold that any entry and possession for the required time which is exclusive, continuous, uninterrupted, visible and notorious, even though

under mistaken claim of title, is sufficient to support a claim of title by adverse possession.

■ However, this conclusion is not dispositive of the matter *sub judice*. Of equal importance under the present factual complex, is the question of whether defendant's acts meet the necessary standard of "open and notorious" possession. It must not be forgotten that the foundation of so-called "title by adverse possession" is the failure of the true owner to commence an action for the recovery of the land involved, within the period designated by the statute of limitations. The justifications for the doctrine are aptly stated in 4 *Tiffany, Real Property* (*3d ed.* 1939) § 1134, *p.* 406 as follows:

> "The desirability of fixing, by law, a definite period within which claims to land must be asserted has been generally recognized, among the practical considerations in favor of such a policy being the prevention of the making of illegal claims after the evidence necessary to defeat them has been lost, and the interest which the community as a whole has in the security, of title. The moral justification of the policy lies in the consideration that one who has reason to know that land belonging to him is in the possession of another, and neglects, for a considerable period of time, to assert his right thereto, may properly be penalized by his preclusion from thereafter asserting such right. It is, apparently, by reason of the demerit of the true owner, rather than any supposed merit in the person who has acquired wrongful possession of the land, that this possession, if continued for the statutory period, operates to debar the former owner of all right to recover the land."

See also 5 *Thompson, Real Property* (1957 *Replacement*), 497.

■ In order to afford the true owner the opportunity to learn of the adverse claim and to protect his rights by legal action within the time specified by the statute, the adverse possession must be visible and notorious. In 4 *Tiffany, supra* (*Supp.* 1969, at 291), the character of possession for that purpose, is stated to be as follows:

> "\* \* \* it must be public and based on physical facts, including known and visible lines and boundaries. Acts of dominion over the

land must be so open and notorious as to put an ordinarily prudent person on notice that the land is in actual possession of another. Hence, title may never be acquired by mere possession, however long continued, which is surreptitious or secret or which is not such as will give unmistakable notice of the nature of the occupant's claim."

See also 5 *Thompson, supra,* § 2546; 6 *Powell, Real Property,* ¶ 1013 (1969).

Generally, where possession of the land is clear and unequivocal and to such an extent as to be immediately visible, the owner may be presumed to have knowledge of the adverse occupancy. In *Foulke v. Bond,* 41 *N. J. L.* 527, 545 (*E. & A.* 1879), the court said:

"Notoriety of the adverse claim under which possession is held, is a necessary constituent of title by adverse possession, and therefore the occupation or possession must be of that nature that the real owner is *presumed to have known* that there was a possession adverse to his title, under which it was intended to make title against him." (Emphasis supplied)

However, when the encroachment of an adjoining owner is of a small area and the fact of an intrusion is not clearly and self-evidently apparent to the naked eye but requires an on-site survey for certain disclosure as in urban sections where the division line is only infrequently delineated by any monuments, natural or artificial, such a presumption is fallacious and unjustified. See concurring opinion of Judge (now Justice) Francis in *Predham v. Holfester,* 32 *N. J. Super.* 419, 428–429. (*App. Div.* 1954). The precise location of the dividing line is then ordinarily unknown to either adjacent owner and there is nothing on the land itself to show by visual observation that a hedge, fence, wall or other structure encroaches on the neighboring land to a minor extent. Therefore, to permit a presumption of notice to arise in the case of minor border encroachments not exceeding several feet would fly in the face of reality and require the true owner to be on constant alert for possible small encroachments. The only method of certain determination

would be by obtaining a survey each time the adjacent owner undertook any improvement at or near the boundary, and this would place an undue and inequitable burden upon the true owner. Accordingly we hereby hold that no presumption of knowledge arises from a minor encroachment along a common boundary. In such a case, only where the true owner has actual knowledge thereof may it be said that the possession is open and notorious.

It is conceivable that the application of the foregoing rule may in some cases result in undue hardship to the adverse possessor who under an innocent and mistaken belief of title has undertaken an extensive improvement which to some extent encroaches on an adjoining property. In that event the situation falls within the category of those cases of which *Riggle v. Skill,* 9 *N. J. Super.* 372 (*Ch. Div.* 1950), affirmed 7 *N. J.* 268 (1951) is typical and equity may furnish relief. Then, if the innocent trespasser of a small portion of land adjoining a boundary line cannot without great expense remove or eliminate the encroachment, or such removal or elimination is impractical or could be accomplished only with great hardship, the true owner may be forced to convey the land so occupied upon payment of the fair value thereof without regard to whether the true owner had notice of the encroachment at its inception. Of course, such a result should eventuate only under appropriate circumstances and where no serious damage would be done to the remaining land as, for instance, by rendering the balance of the parcel unusable or no longer capable of being built upon by reason of zoning or other restrictions.

We remand the case for trial of the issues (1) whether the true owner had actual knowledge of the encroachment, (2) if not, whether plaintiffs should be obliged to convey the disputed tract to defendant, and (3) if the answer to the latter question is in the affirmative, what consideration should be paid for the conveyance. The remand, of course, contemplates further discovery and a new pretrial.

Remanded for trial in accordance with the foregoing.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*Opposed*—None.