**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0043-20

MIN WU and YONGUA CHEN,

    Plaintiffs-Appellants,

v.

PETER GESUALDO, GIOVANNI
GESUALDO, and ANTONIO
GESUALDO,

    Defendants-Respondents.

_____

Argued January 4, 2022 – Decided January 14, 2022

Before Judges Fisher and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000176-19.

Jared J. Limbach argued the cause for appellants (Donnelly Minter & Kelly, LLC, attorneys; Patrick J. Galligan, of counsel and on the briefs; Jared J. Limbach, on the briefs).

Anthony Marucci argued the cause for respondents (Rubenstein, Berliner & Shinrod, LLC, attorneys; Anthony Marucci, of counsel and on the brief).

PER CURIAM

Plaintiffs Min Wu and Yongua Chen commenced this action seeking, among other things, a declaration that they and their predecessors successfully wrested away from defendants Peter, Giovanni, and Antonio Gesualdo – through adverse possession – title to a portion of defendants' abutting property by enveloping that portion with a post-and-rail fence for more than fifty years. After a bench trial, Chancery Judge James R. Paganelli found in defendants' favor, concluding that because the contested property was relatively small and far back from defendants' dwelling, the encroachment was not "clear and unequivocal and to such an extent as to be immediately visible" to defendants or their predecessors. In deferring to the judge's findings of fact and to his sound and logical conclusions about the significance of those facts, we affirm the dismissal of plaintiffs' complaint.

Plaintiffs acquired their Livingston residence, which fronts Millstone Drive, in September 2011; defendants acquired their neighboring residence, which fronts West Mount Pleasant Avenue, in May 2019. The parties' properties

A-0043-20

abut in an unusual way. Defendants' property is a long and narrow rectangle.[1] A corner of defendants' backyard juts into the rear of plaintiffs' property like the way Colorado's northeast corner juts into Nebraska, creating Nebraska's southwest panhandle.[2]

From 1966 to 2019, plaintiffs and their predecessors maintained a post-and-rail fence at the rear of their yard. An August 2011 survey obtained by plaintiffs revealed that the fence jutted into defendants' property about twenty-five feet at one point and twenty feet at another. The area enveloped by the fence is approximately 1,100 square feet of defendants' property.[3]

Plaintiff Yongua Chen and defendant Peter Gesualdo were the only parties to testify at a one-day bench trial in July 2020. The only other witness was a

---

[1] To be precise, the dimensions of defendants' property are: 98.15 feet on its southern border that runs along West Mount Pleasant Avenue; 108.08 feet on the northern border, the side parallel to West Mount Pleasant Avenue but farthest from it; 406.04 feet on the western border, which abuts plaintiffs' property at that part of its length furthest from West Mount Pleasant Avenue; and 399.88 feet on the eastern border.

[2] In the example, plaintiffs are Nebraska and defendants are Colorado.

[3] The judge correctly recognized the proofs failed to reveal the exact dimensions of this disputed area, and he did not adopt the assertion that the total area was 1,100 square feet, although the surveys admitted in evidence generally support that assertion. Simple but admittedly imprecise mathematics would reveal that defendants' entire property is nearly 44,000 square feet, with the disputed area consisting of approximately 2.5 percent of the lot's overall size.

A-0043-20

retired engineer, who by the time of trial had resided in the neighborhood for more than fifty years; he testified that he helped one of plaintiffs' predecessors design portions of their backyard, and he confirmed that the post-and-rail fence had been in place and cared for by plaintiffs' predecessors since at least 1966.

Plaintiff Yongua Chen testified that he maintained the disputed property by weeding, fertilizing, and mowing the grass and that he repaired several rails and posts damaged by Superstorm Sandy in 2012. Defendant Peter Gesualdo testified that, prior to closing on defendants' purchase of their property in May 2019, he noticed the post-and-rail fence and retained a surveyor who confirmed the fence's encroachment. After closing, Gesualdo obtained a permit to erect a fence along what his surveyor found to be the actual boundary line.

In August 2019, Gesualdo began dismantling the post-and-rail fence. Yongua Chen demanded that he cease, and when their disagreement continued, police were called. An officer instructed Gesualdo to cease and suggested they resolve their disagreement in court. A few days later, Gesualdo completely removed the post-and-rail fence and erected a stockade fence along the property line defined by the parties' surveys.

In August 2020, Chancery Judge Paganelli rendered his written findings of fact and conclusions of law. He found all three witnesses credible and that,

4

when considering plaintiffs' claim to adverse possession of the disputed area enveloped by the post-and-rail fence, plaintiffs failed to establish the elements of open and notorious possession and adverseness. He entered judgment in favor of defendants dismissing the complaint in its entirety.[4]

Plaintiffs appeal, arguing that we should review the issues de novo and that the evidence "clearly and unmistakably met the requirements for adverse possession."

Although a judge's findings in a non-jury matter are entitled to deference when supported by substantial credible evidence, Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011), as the judge noted, and as the parties appear to concede, the relevant evidence – with one exception – was undisputed. But for that one exception, we review the decision de novo in examining the judge's application of the facts to the following legal principles.

To prevail on their claim of adverse possession, plaintiffs were required to demonstrate, by a preponderance of the evidence, that, for the entirety of the

---

[4] Besides the adverse-possession count, plaintiffs' complaint sought to quiet title and demanded compensatory damages caused by defendants' alleged trespass, nuisance, and removal of plaintiffs' post-and-rail fence. At the end of his written decision, the judge found these other claims were "tethered" to plaintiffs' adverse-possession claim and dismissed the entirety of the complaint. Plaintiffs have not appealed the dismissal of their other claims.

relevant statutory period – in this case, thirty years, N.J.S.A. 2A:14-30[5] – their possession[6] of the disputed area was: (1) continuous and uninterrupted; (2) actual and exclusive; (3) open and notorious; and (4) adverse and hostile. Patton v. N. Jersey Dist. Water Supply Comm'n, 93 N.J. 180, 187 (1983). Chancery Judge Paganelli found that plaintiffs' position on the first two elements was supported by the evidence, so we need not discuss them further. We instead focus on the judge's determination that plaintiffs failed to prove the third element of "open and notorious" possession and, as to the fourth, that possession of the small area of land was adverse.

In considering the third element, we start with the established premise that the claimant's adverse act of dominion "must be so open and notorious as to put an ordinary prudent person on notice that the land is in actual possession of another." Mannillo v. Gorski, 54 N.J. 378, 388 (1969). Possession must be

---

[5] N.J.S.A. 2A:14-30 states that "[t]hirty years' actual possession of any real estate . . . shall, in whatever way or manner such possession might have commenced or have been continued, vest a full and complete right and title in every actual possessor or occupier of such real estate."

[6] Even though plaintiffs have owned their residence since 2011 – less than thirty years – the judge found from the undisputed testimony about the presence of the fence and from the doctrine of tacking – "the accumulation of consecutive periods of possession by parties in privity with each other," O'Keeffe v. Snyder, 83 N.J. 478, 503 (1980) – that plaintiffs and their predecessors maintained the fence for the necessary time period.

A-0043-20

visible and unequivocal so that the true owner can know – or be presumed to know – that someone was attempting to hold possession adverse to the true owner's title. Foulke v. Bond, 41 N.J.L. 527, 545 (E. & A. 1879); see also Mannillo, 54 N.J. at 388. It is this circumstance on which the chancery judge's decision about the open and notorious third element and the adverse nature required for the fourth element primarily rested.

That is, as the Mannillo Court held, "when the encroachment of an adjoining owner is of a small area and the fact of an intrusion is not clearly and self-evidently apparent to the naked eye," the notion that the non-owner's possession is open and notorious, or adverse, is "fallacious and unjustified." Ibid. Justice Francis, when sitting in this court, wrote a concurring opinion, which was cited with approval in Mannillo, that aptly summarized the point: "[u]nless such aggressive trespass is established, an unintended continuing wrong should not ripen into title." Predham v. Holfester, 32 N.J. Super. 419, 429 (App. Div. 1954). This case, like many others, turned on whether the trespass of plaintiffs and their predecessors could be viewed as "aggressive."

Chancery Judge Paganelli correctly applied these principles, concluding that even with tacking, plaintiffs were unable to establish that defendants or their predecessors had actual notice of the trespass. There is nothing about the small

7

fenced-in area that would suggest an actual encroachment absent a survey; indeed, as the judge found, the encroachment was at "the far rear" of defendants' "lengthy (400 foot) property and obscured on [d]efendants' side by a swath of trees."

The judge's finding that the encroachment was neither obvious nor self-evident is well supported by the surveys and the other evidence before him. Defendants' property is a narrow rectangle slightly more than 100 feet wide and slightly more than 400 feet long, and the encroachment carved into the rear of the property, starting approximately 380 feet and extending even further away from where defendants' property abuts West Mount Pleasant Avenue. The front of defendant's dwelling is approximately thirty-six feet from West Mount Pleasant Avenue, so the encroachment occurred at a considerable distance from the dwelling at the end of a long backyard. The judge's finding about this distance from the dwelling and the overall minor nature of the size of the encroached area is a finding well-supported by all the evidence and deserving of our deference, Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974), and provides great weight to the judge's conclusion that plaintiffs failed to sustain their burden of proving "adverseness or an open and notorious possession." We have been provided with no principled reason to intervene or

second-guess the experienced judge's findings and conclusions. In so holding, we adhere to what Judge James J. Petrella said for this court in Maggio v. Pruzansky, 222 N.J. Super. 567, 582 (App. Div. 1988): the erection of a fence – as a general matter – should not be the means of setting "a trap for the unwary nontrespassing landowner" or the cause of "creating more neighbor and title disputes" than it solves; good fences should, instead, make good neighbors. Robert Frost, Mending Wall (1914).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0043-20