SOUTHMAYD and others *vs.* McLAUGHLIN.

24  181
52  603
53  28
53  47
24  181
61   3

1. In a suit for an injunction, by one of two adjacent land owners, to restrain the other from erecting a building on lands of the former, the complainant is entitled to the benefit of an actual location, by fence, erected more than twenty-five years since, and up to which, he and those under whom he claims, have been in continued possession during all that time.

2. A trespass that goes to the destruction of the inheritance, will be restrained until the trespasser shall have established his right at law.

On bill, answer, and affidavits. Motion to dissolve injunction.

*Mr. Traphagen,* for the motion.

*Mr. J. B. Vredenburgh,* contra.

THE CHANCELLOR.

The bill in this cause is filed for an injunction to restrain the defendant from occupying, with a brick building he is about to construct, part of the land of complainants. The complainants' premises are the homestead of the late Henry Southmayd, and consist of a lot on the northwest corner of Grand and Warren streets, in Jersey City, on which is the dwelling-house in which Mr. Southmayd resided from 1848 until his death, in March, 1854. In 1847, he then being the owner of the premises, (which were, at that time, low land,) filled in the lot and set the fences, which stood, as so set by him, up to the 28th of June last, when the defendant, who owns the lot adjoining it on the east, on Grand street, pulled it down to make way for laying the foundation of his building on part of the land which it enclosed. The defendant claims that the fence was on the land to which he had title by deed, and that it included, in the Southmayd lot, a strip of nine inches in width, on Grand street, and forty-six feet and six inches deep; which, of right, belongs to him.

The case shows that Henry Southmayd, and the complainants claiming under him, by devise, have had unquestioned possession of the strip in question, as part of their lot, since 1847. This appears, notably, by the affidavit of Dudley S. Gregory, who owned the defendant's lot from 1842 to 1850, under a conveyance made to him in the former year, by Henry Southmayd. Indeed, it is not denied in the answer, that the complainants and Henry Southmayd have had such possession.

It appears also, that between the fence as it stood when it was pulled down by the defendant, and what is claimed to be the easterly line of the lot owned by a Mr. Martin, adjoining the defendant's premises on the west, there are twenty-five feet and a quarter of an inch. The defendant's lot is, by the description in his deed, a parallelogram, of twenty-five feet front on Grand street, by one hundred feet in depth. It does not appear that any question has ever been made as to the location of defendant's lot; but it does appear

that its true location has been understood to be the space between the fence above referred to and the fences in a line with it (being the rear fences of lots on Warren street) and the Martin lot, on the easterly line of which is a brick dwelling-house. It further appears that, to establish the complainants' rear line, as insisted on by the defendant, would deprive the complainants of four inches of land, to which, on the defendant's own theory, they are entitled. He insists that they are entitled to only seventy-five feet, measuring from the northwest corner of Grand and Warren streets; but the line, as he would establish it, gives them four inches less than that. The complainants are entitled to the benefit of their actual location, made so many years ago, and their continued possession under it. *Jackson* v. *Perrine,* 6 *Vroom* 137.

There is no doubt that the defendant, unless restrained from so doing by this court, will proceed to build a four-story brick building, partly on the land which the complainants and Henry Southmayd have thus had in undisputed possession, under a claim of ownership, for over twenty-five years. The defendant has not only pulled down the fence, but has proceeded to excavate the land, and drive piles there for his foundation. The notices, verbal and written, given to him by complainants, have been of no avail to prevent him from proceeding to occupy the land in question. A suit at law, commenced by complainants against him for his trespass, has not been effectual to stay him.

As this case stands before me, it is within the province of this court to arrest his progress in the trespass, at least until he shall have established his right at law. *Varick* v. *Corporation of New York,* 4 *Johns. Ch.* 55; *Jerome* v. *Ross,* 7 *Johns. Ch.* 315; *Farron* v. *Van Sittart,* 1 *Eng. R. & C. Cases* 602; *High on Injunctions,* §§ 477, 483.

In Varick v. Corporation, &c., the court said: " The principle upon which the injunction is upheld, is, that after a claim of right, accompanied with actual and constant possession for twenty-five years and upwards, the corporation of

New York cannot be permitted, without due process of law, to enter upon the possession of the plaintiff, and pull down buildings, fences, &c., under their right to regulate highways."

In Farron v. Van Sittart, the court restrained the defendants from committing a trespass, though it was merely the leveling of farm land for the laying of a railway track, or, as the Lord Chancellor expressed it, "making level ground of that of which there is at present no portion level."

In the present case, the trespass goes to the destruction of the inheritance. The defendant is not only proceeding to dig away the soil of the land in possession of the complainants, but is about to take exclusive possession of it with a permanent structure.

The motion to dissolve is denied.