DANIEL W. MYERS v. ADOLPH FOLKMAN AND OTHERS.

Argued June 8, 1916—Decided November 10, 1916.

One claiming title to land by adverse possession must, in an action of ejectment, show that the possession continued for twenty years and that it was, in fact, adverse, that is, with the intention to claim the fee, indicated by some act on his part which would convert mere occupation of the land into adverse possession.

---

On defendant's rule for new trial.

Before Justices SWAYZE, MINTURN and KALISCH.

For the plaintiff, *Bourgeois & Coulomb.*

For the defendants, *John W. Wescott* and *Ulysses G. Styron.*

The opinion of the court was delivered by

SWAYZE, J. This is an action of ejectment. The record title is in the defendants. The plaintiff claims only by adverse possession. There are two insuperable difficulties in the way of his recovery—*first,* he has failed to show possession for the requisite time; *second,* his possession did not on his own uncontradicted proof become adverse until 1906.

(1) He does not pretend that he was personally in possession for twenty years. He relies upon the possession of his predecessors in title. To make out his case, he is obliged to claim the benefit of the possession of John D. Doyle, even against Doyle's own title. To accomplish this, the plaintiff sets up a lease to John D. Doyle made by Charles R. Myers, a predecessor in title of the plaintiff, at a time when David Doyle, John D.'s father, was alive and had title to the land. The plaintiff's argument is that John D. Doyle as tenant was estopped to deny the title of Charles R. Myers, and therefore John D.'s possession was the possession of Myers, and can be tacked to the possession of other predecessors in title to the plaintiff and thus enure to his benefit. The extent of this estoppel depends on the terms of the lease. It is not produced, but its terms are made clear by the testimony of Charles R. Myers. He says it was for the same property as was described in a subsequent lease of 1898 to Doyle's sister, Mrs. Henry, which was produced; that the lease, which had not yet expired, was "virtually turned over" to Mrs. Henry; that "practically we rented the same property that John D. Doyle had rented;" that he "leased the same property to John D. Doyle that he bought from Leedom;" that the "leases evidently was taken from the deed for the property itself, not the buildings, but it just went by the deed." Myers did not know at the time of the leases, he says, that the buildings covered more land than the deed to him from Leedom called for; the first he knew the deed conveyed more than the fifty feet it purported to convey was in 1911 or 1912. The lease to Henry described the premises as "all that tract of land now occupied by party of the second part, being fifty feet fronting on the boardwalk, three hundred feet deep and including *same* (*sic*) the use of a seventeen-foot alley, rear of Missouri avenue." The dimensions, fifty by three hundred, do not include the land in dispute. We think the estoppel of the tenant to deny the landlord's title must be limited to the tract particularly described. No doubt both parties meant that the description should define as well as describe the demised premises.

(2) The second difficulty in the plaintiff's case is his failure to show adverse possession prior to 1906. He has contented himself with showing peaceful possession. He seems to think that a failure of the rightful owner to make claim is the same as a claim of adverse right made by him and his predecessors in title. It is, however, well settled that mere possession without claim of right or intent to disseize the real owner is not enough to constitute adverse possession. As Chief Justice Beasley says in *Leport* v. *Todd,* 32 *N. J. L.* 124, 131: "It is the existence of an intention to claim the fee, and the doing of some act indicative of such intention, which convert the occupation of land into an adverse possession; and this is the doctrine on which the decision of every case proceeds." So well settled is the doctrine that Justice Depue speaking for the Court of Errors and Appeals in *Foulke* v. *Bond,* 41 *Id.* 527, repeatedly takes it for granted. Thus he says: "We have seen that entry under color of title confers an advantage in that it operates, under some circumstances, as a disseizin, and determines the *quo animo* with which the entry was made. Having color of title is also advantageous to the disseisor in giving character to his possession after entry made." So he speaks of an *"intention to assert ownership"* as evidence of adverse possession and of the necessity that the nature of the possession should be such that the real owner must be presumed to know that there was a possession adverse to his title, under which it was *intended* to make title against him.

It is hardly necessary to refer to cases in other jurisdictions where the question has been expressly ruled upon. It may, however, be well to refer to a few. In a recent English case (*Littledale* v. *Liverpool College* (1900), 1 *Ch.* 19, 23), Master of the Rolls Lindley said that possession by the plaintiffs involved an *animus possidendi; i. e.,* occupation with the intention of excluding the owner as well as other people. Sir F. H. Jeune and Lord Justice Romer agreed with what the master of the rolls said as to the *animus possidendi.*

The United States Supreme Court in *Harvey* v. *Tyler,* 2 *Wall.* 328 (at *p.* 349), approved of an instruction to the jury

that if plaintiff's title was found to be the paramount title, and any of the defendants entered upon and took possession of the land, without *title* or *claim,* or *color of title,* that such occupancy was not adverse to the title of plaintiffs but subservient thereto.

The Supreme Judicial Court of Maine, in *Preble* v. *Maine Central Railroad Co.,* 27 *Atl. Rep.* 149, said: "That rule is that one who by mistake occupies for twenty years or more, land not covered by his deed, with no intention to claim title beyond his actual boundary, whatever that may be, does not thereby acquire title by adverse possession to land beyond the true line."

In *Robinson* v. *Kime,* 70 *N. Y.* 147 (at *p.* 152), the Court of Appeals said: "To constitute an adverse possession from which a grant will be presumed, it must have been under a claim of title exclusive of any other right, and it must have been definite, exclusive and notorious, and for a period of twenty years uninterruptedly."

Further citation of authority is useless. We think in the present case that Charles R. Myers' own testimony, the deed from Leedom, the leases to Doyle and Henry and Myers' own ignorance until 1911 or 1912, that the bathhouses were on Doyle's land, make it clear that there was a mere mistake in the location of the boundary line, and no intent to claim title to Doyle's property. The case differs from *Davock* v. *Nealon,* 58 *N. J. L.* 21, in that Charles R. Myers disclaims any intent to claim what did not belong to him and apparently never asserted a right to land outside the bounds of his title until 1906, when in the deed to Moore after the description by metes and bounds, he added, "and also all the right, title, property, possession and estate of the said party of the first part, in and to any and all lands in the possession and occupancy of the said party of the first part, and included within the building and fences enclosing and including the same." Then for the first time the possession became adverse.

There should have been a nonsuit because the plaintiff failed to prove adverse possession for twenty years, and the rule must be made absolute.