ADOLPH FOLKMAN, appellant,

*v.*

CHARLES R. MYERS et al., respondents.

[Decided September 30th, 1921.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, who filed the following opinion:

"1. I think it clear that the deed of conveyance of August 1st, 1877, from the Camden and Atlantic Land Company to Jacob H. Leedom, and the subsequent deed of conveyance of April 1st, 1890, from Jacob H. Leedom to Charles R. Myers, for a part of the land embraced in the prior conveyance vested in Myers the fee of a tract of land fronting fifty feet in width on the ocean with its westerly boundary line fifty feet easterly from and parallel to the easterly line of Missouri avenue, as that avenue existed in the year 1869. That westerly line of the Myers tract is accurately shown on the map marked 'D 13' by a black line between small circles which are made to represent two adjacent rows of piling; the easterly boundary line of the Myers tract is parallel to the line referred to and fifty feet easterly thereof and is accurately shown on that map as the line of demarkation between the yellow and green colors. This location of the easterly line of Missouri avenue as it existed in the year 1877 is shown on the map referred to by a red dash line five feet easterly of the easterly line of that avenue as it exists at this time.

"The facts upon which this conclusion is based are the following:

"Prior to 1869 ·the Camden and Atlantic Land Company owned all the land between Missouri avenue and Arkansas avenue and Pacific avenue and the ocean. By deed dated August 27th, 1869, and recorded in the clerk's office of Atlantic county in Book 37 of Deeds, at page 97, that company conveyed to the Sea View Hotel Company a strip of land fifty feet in width adjacent to the easterly line of Missouri avenue and extending from Pacific avenue to the ocean. The description of the land as contained in that deed began 'at the southeast corner of Pacific and Missouri avenues' and ran thence easterly 'along the southerly·side of Pacific avenue fifty feet'; thence on a line 'parallel with Missouri avenue' to the ocean; 'thence on a westerly course along the ocean fifty feet to the easterly side of Missouri avenue; thence along the side of said avenue four hundred and forty feet, more or less, to the place of beginning.'

"By deed dated August 1st, 1877, and recorded in Atlantic county clerk's office in Book 68 of Deeds, at page 212, the Camden and Atlantic Land Company conveyed to Jacob H. Leedom a strip of land fifty feet in width easterly of and adjacent to the land last above described and extending southerly to the ocean. The land so conveyed is specifically described in that deed as fifty feet in width and as adjacent to the line of the Sea View Hotel Company.

"By deed dated September 20th, 1877, and recorded in Atlantic county clerk's office in Book 69 of Deeds, at page 394, the Camden and Atlantic Land Company conveyed to David Doyle a strip of land fifty feet in width easterly of and adjacent to the land last described as having been conveyed to Leedom, and extending southerly to the ocean. The land so conveyed is specifically described in that deed as beginning 'one hundred feet eastwardly from Missouri avenue' and running thence easterly parallel to Pacific avenue fifty feet, and thence southerly 'on a line parallel with Missouri avenue' to the ocean; thence along the ocean 'fifty feet to the line of land now of Jacob H. Leedom'; thence along said 'Leedom's line seven hundred feet, more or less, to the place of beginning.'

14

"The testimony discloses that about the year 1884 the easterly line of Missouri avenue was moved westerly about five feet, and is now about that distance westerly of the point where it was at the time the three above conveyances by the Camden and Atlantic Land Company were made. It is, in consequence, now claimed by complainant that in ascertaining the boundary lines between these three tracts the respective fifty feet measurements must be taken with reference to the easterly line of Missouri avenue, as that avenue is now located on the ground.

"I am convinced that that contention cannot prevail. It does not appear that this change in the location of the easterly line of Missouri avenue was by either adequate legislative authority or judicial sanction, nor does it appear that the new location conformed more accurately than the old to its correct location as that location would have been ascertained from scientific data; but even though its new location should be deemed to have been officially or authoritatively made or should be deemed to be the accurate location as ascertained by scientific data, that ascertainment or change would not have the effect of disturbing the boundary lines between the three tracts. The first conveyance can only be understood as having been made with reference to, Missouri avenue as it then existed on the ground; it, accordingly, conveyed to a point fifty feet easterly therefrom; the second conveyance tied to the westerly line of the first as its beginning point; the third tied both to the second conveyance and to Missouri avenue to define its location. The obvious intention and purpose of the three conveyances was to convey one hundred and fifty feet easterly from a defined point, and that defined point was the easterly side of Missouri avenue as that avenue then existed on the ground. Even the subsequent ascertainment of error in the location of that avenue could not change the location of the land actually sold by the vendor and purchased by the vendees, providing the vendor had title to the land so sold. This view finds adequate support in *Haring* v. *VanHouten, 22 N. J. Law 61,* and *Smith* v. *State, 23 N. J. Law 130; S. C., Ibid. 712.*

"The claim of title by defendant Myers, who now owns the Leedom title, must accordingly be confirmed as to the land

marked with yellow on the map already referred to, irrespective of the alternative claim of Myers to title to it by adverse possession. That yellow strip is the easterly five feet of the land already referred to as having been conveyed to Leedom. The easterly boundary of that five feet strip marks the true boundary line between the Leedom and Doyle tracts.

"2. I entertain the view that the claim of title of defendant Myers to land easterly of the boundary line above defined cannot be sustained. Myers' assertion of title east of that boundary line is wholly based upon a claim of adverse possession.

"Defendant Myers purchased the Leedom tract by deed dated April 10th, 1890. No uncertainty can be said to exist touching the location of the land specifically described in that deed. The northerly boundary line is described in that deed as running easterly to 'the line of David Doyle's land,' and that point is referred to in the description as one hundred feet easterly of Missouri avenue; the easterly boundary line is described as running 'southwardly along the line of said Doyle's land and parallel with Missouri avenue'; the southerly boundary line then runs westerly fifty feet, and the westerly boundary line then runs northerly parallel with Missouri avenue to a corner of land of W. A. and A. I. Lee. The Lees' land here referred to is the tract hereinbefore referred to as having been conveyed by the Camden and Atlantic Land Company to the Sea View Hotel Company.

"The present claim of Myers is that prior to his purchase from Leedom the latter had enjoyed possession not only of the land covered by his deed but also of about eight feet of the Doyle tract easterly of the division boundary line of the two tracts, and that thereafter Myers enjoyed possession thereof for the remainder of the period necessary to perfect a title by adverse possession.

"There is little evidence to disclose the nature of Leedom's possession of the land beyond the true boundary line other than the fact of physical possession by him; whether he held under Doyle or adversely to him must be measurably left to inference from the naked fact of physical possession. But the nature of the possession of Myers is fully disclosed by his testimony. He

purchased from Leedom and took physical possession of what Leedom had occupied under the belief that his possession corresponded to his title. In that belief he was mistaken, since he occupied about eight feet of Doyle's land adjacent to the boundary line clearly defined in both his and Doyle's deeds, and that occupancy was with no intention on the part of Myers to occupy more land than he had purchased.

"That situation raises the question whether possession in such circumstances can be said to be adverse.

"A great number of decisions are to be found in the several states touching the force to be given to possession by mistake. Although the decisions are in hopeless conflict nearly all may be said to recognize in some form the necessity of an intent to disseize to render the possession adverse. Some authorities adopt the view that the mistaken belief that one holds to his own line necessarily includes the intent to disseize; others hold that such a belief is inconsistent with any intent to disseize or to claim the land of another; still others hold that such a belief may appropriately be accompanied with an intent to claim the land only in case there is no mistake touching the true boundary and may also be appropriately accompanied with an intent to claim the land even if found to be the land of another; such cases seek to ascertain which intent in fact existed; a few cases held intent immaterial. Mr. Freeman, in his note in *24 Am. St. Rep. 389,* collects numerous authorities, and, touching the cases holding that possession by mistake of boundary is not adverse, says:

" 'It appears to be a fair result of the decisions upon this side of the question to say that whenever a person proceeds to take possession of a tract of land which has been conveyed to him, and in so doing he includes within his possession and subsequently holds a portion of the adjacent tract, and it appears probable that his taking possession of the strip not belonging to him arose through his ignorance or mistake with respect to his boundary, then, that, though he believes and claims that all the land of which he is possessed is his, and intends to exclude all persons therefrom, yet that his possession is not adverse, as against the owner of the strip of which he has taken possession, until the true boundary line is ascertained, and he for the first time has an opportunity of determining whether he will hold and adversely possess land which he knows not to be included within the boundaries of the conveyance under which his entry was originally made.'

"In the same note Mr. Freeman suggests that decisions to the contrary do not seem to accord with the presumption usually indulged in respect to the holding of lands. He then proceeds:

" 'The presumption to which we refer is one incorporated in many of the statutes of limitations, and which, we think, is generally implied, whether stated in direct terms or not, and is to the effect that possession is always presumed to be held in subordination to the legal title. By reason of this presumption, the mere holding of the lands of another, however long continued, is not sufficient evidence of title by prescription, but must be aided by other testimony, from which the inference may reasonably be drawn that such possession was maintained in hostility to the title of the true owner. The presumption ought to apply with special force when it appears probable that possession of lands adjacent to a boundary line was taken through ignorance or inadvertence, and maintained without thought of disseizing the owner.'

"Some additional cases are collected by the same writer in his note to *62 Am. Dec.* (at *p. 527*), where he says:

" 'The question whether a party can acquire a title by adverse possession to lands held by him by mistake frequently arises; and the rule is well settled that where the owner of lands, through ignorance, inadvertence or mistake, takes and holds possession beyond his true line, but with no intention of claiming further than his actual boundaries, such possession is not adverse and will not support a plea of the statute of limitations.'

"But further reference to the views entertained in other states would, I think, be here inappropriate, in view of the decision of our supreme court in *Myers* v. *Folkman, 89 N. J. Law 390*. This court can only appropriately recognize the law as there defined. In that case defendant herein brought ejectment against complainant herein for the very land now under consideration. It appeared there, as here, that Myers took possession of part of the Doyle tract beyond the true boundary line in the mistaken belief that he had acquired title to it from Leedom, but with no intent to claim title to Doyle's property. Possession with that intent was there held not to be adverse.

"It is now urged on behalf of Myers that in this suit Myers has made it more clear that his intent was to claim title to and to hold possession as his own land against the whole world. The

art of phrasing his testimony in that manner adds nothing when it is at the same time admitted by him that he had no intention to occupy more than he acquired by his purchase, or that he occupied the territory now in dispute in the belief that he had acquired title to it by his purchase. Indeed, it seems impossible to conceive the existence of an intention upon the part of a vendee to claim title by possession of land not covered by his deed when he has no knowledge or thought that his possession may embrace land not conveyed by his deed and has no intention of encroaching on the rights of another; the belief that the land in possession is covered by the deed is inconsistent with the intent to claim title and to hold against the world, since the intent is to hold one's own land; but the absence of an intent to invade, and. the absence of knowledge of the invasion of the rights of another, is inconsistent with a concurrent defined intent to hold in case it should be found that the possession is wrongful, because the alternative intent to hold in case it should be found that the holding is wrongful could not enter the mind unless or until some thought of possible error had occurred.

"I will advise a decree quieting the title of complainant to that part of the land described in the bill which is easterly of the boundary line as herein defined."

*Mr. Clarence L. Cole,* for the appellant.

*Messrs. Bourgeois & Coulomb,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Leaming.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK—13.

*For reversal*—None.