100 N.J. Super. 140 (1968)
241 A.2d 276
FRED MANNILLO AND ALICE MANNILLO, PLAINTIFFS,
v.
MARGARET GORSKI, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 14, 1968.
*141 Mr. George E. Ostrov attorney for plaintiffs.
Mr. Theodore D. Parsons, Jr. attorney for defendant (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
LANE, J.S.C.
At the conclusion of the final hearing, the Court made certain findings of fact and rendered judgment for the defendant that she had acquired ownership by adverse possession of a strip of land 15 inches in width running the length of her west boundary, the record title to which strip was in the plaintiffs. The matter is now before the Court on motion by the plaintiffs for an order granting a new trial or setting aside the judgment on the grounds that the judgment is contrary to the weight of the evidence and that the judgment is contrary to the law, and as a necessary corollary, entering judgment for the plaintiffs.
In the spring of 1945, the defendant with her husband went into possession of her property under a contract dated April ___, 1945. She continues to be in possession. The property, in Keansburg, is rectangular. It has a frontage of 25 feet on West Shore Street and extends 100 feet south to South Street. Under date of April 16, 1962, the defendant and her husband, who is now deceased, obtained a deed to the premises. Plaintiffs own the adjoining lot to the west, having gone into possession shortly after May 23, 1953. Their lot has the same dimensions.
It is admitted that there is a 15 inch encroachment upon the plaintiffs' land by steps leading from the west side of the defendant's house and a concrete walk that runs south from the steps to South Street.
In the summer of 1946, one of the defendant's sons, who was then 14 years old, with the assistance of his father, made certain additions and changes to the defendant's house. He extended two rooms at the rear of the house, closed in a screen porch on the front, and put a concrete platform with steps on the west side of the house for use in connection with a side door. Prior to that time there had been wooden *142 steps at that location. In 1953, certain necessary repairs were made to both the plaintiffs' and the defendant's houses because of a flooding condition that had occurred. The foundations of both houses were raised. The same son who had put in the original concrete steps built new steps but on the location of the original concrete steps. It was alleged by the plaintiffs that at the time the new steps were installed in 1953, the encroachment was either begun or was increased.
From the platform the steps, which are of the same width, run both to the south and to the north. The platform forms a stoop for a door leading to the kitchen of the defendant's house and extends 33 inches west from the house. The door itself is 36 inches wide. The door would not be useable if the platform and steps were cut down by 15 inches.
At the time the original concrete steps were installed, there was a concrete walk installed from the steps south to the end of the house. This concrete walk was the same width as the steps. At that time the area between the two houses was dirt. Sometime later, the concrete walk was extended further to the south from the rear of the house to South Street.
In 1965 the plaintiffs engaged a fence company to put a wire fence completely around their property. This fence was placed up to the platform in question. It is, therefore, approximately 15 inches inside the east boundary of the plaintiffs' land. Previously there had been a fence running from approximately the location of the platform to the rear of the plaintiffs' property, which fence was installed by the plaintiffs' predecessor in title in late 1947 or early 1948. This fence was west of the platform and walk.
Plaintiff Fred Mannillo testified that in 1960 after the property to the west of his lot had been surveyed and staked out, he ran a tape from the easterly stake across the front of his property and at that time discovered that defendant's walk and steps encroached. He further testified that he spoke to the defendant about the encroachment at that time; *143 however, he made no real complaint concerning it. For the reasons stated at the conclusion of the trial, the Court does not believe the testimony of Mr. Mannillo that he protested to the defendant at that time or at any time until shortly before the complaint was filed.
At the conclusion of the final hearing, the Court under the authority of Poulos v. Dover Boiler & Plate Fabricators, 5 N.J. 580 (1950) ruled against the defendant's claim to a way of necessity.
Defendant claims ownership of the 15 inch strip by adverse possession under N.J.S. 2A:14-6, which provides:
"Every person having any right or title of entry into real estate shall make such entry within 20 years next after the accrual of such right or title of entry, or be barred therefrom thereafter."
The Court reiterates its finding that when the new concrete steps were built, they did not increase the encroachment but extended no further onto the property of the plaintiffs than had the original steps. Defendant has shown by clear and convincing evidence that she has been in possession of the 15 inch strip extending from her steps to the rear of her house for a period of more than 20 years prior to the time the complaint was filed. Such possession was exclusive, continuous, uninterrupted, visible and notorious. The encroachment was of such a nature that it should have been known by the plaintiffs and their predecessors in title.
The question presented is whether the defendant's possession had the requisite hostility to be adverse to the true owner.
It was stipulated at the trial that neither the defendant nor her son knew that her steps and walk encroached on the plaintiffs' property until shortly before the complaint was filed. Defendant and her son thought that the steps and walk were on her property. On the basis of this stipulation plaintiffs seek to infer that had defendant known that her steps would encroach they would not have been built. The opposite inference could also be drawn; however, this Court *144 will not infer that the defendant and her son would have built the steps and walk in their present location had they known that there was an encroachment on their neighbor's property. Cf. Bell v. Merchants B. & L. Assn., 132 N.J. Eq. 356 (Ch. 1942), affirmed o.b. 133 N.J. Eq. 345 (E. & A. 1943).
Plaintiffs rely upon Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954). Under that case to establish the requisite "hostility" for adverse possession, a claimant must show that there was a subjective hostile intention  a premeditated and predesigned hostility. The most that can be said for the defendant's claim here is that there was an honest mistake made. Had the defendant shown that she intended to trespass and to take that which was not hers, she would have been entitled to a judgment in her favor. Such principle of law offends the conscience of this Court.
Judge Jayne in Predham v. Holfester, supra, recognized that the rule followed had been vigorously criticized and that it was the minority rule. 32 N.J. Super., at pp. 426-427. That Court, however, felt bound by Folkman v. Myers, 93 N.J. Eq. 208 (E. & A. 1921).
In Folkman v. Myers, supra, the Court of Errors and Appeals in affirming a decree of the Court of Chancery adopted the opinion of Vice Chancellor Leaming. The Vice Chancellor held that the respondent's claim to a strip of land by adverse possession could not be sustained because his possession had been under a mistake and not with intent to claim beyond his own boundary. He did not necessarily adopt the rule because he thought it was the proper rule but rather he felt compelled to follow a prior decision of the Supreme Court, Myers v. Folkman, 89 N.J.L. 390 (Sup. Ct. 1916). 93 N.J. Eq., at p. 213. That action was between the same parties with the claimed adverse possessor seeking ejectment. The Supreme Court pointed out that there were "two insurmountable difficulties" preventing the plaintiff from recovering. The first difficulty was that he failed to show possession for the requisite period of time, and the second difficulty *145 was that his possession was in fact not adverse for the requisite period because he disclaimed "any intent to claim what did not belong to him and apparently never asserted a right to land outside the bounds of his title * * *." 89 N.J.L., at p. 393. The Supreme Court need never have reached the second question any more than Predham had to reach the question of hostility. See concurring opinion of Justice (then Judge) Francis, 32 N.J. Super., at pp. 428-429.
In fact, what Predham v. Holfester, supra, does is to make one of the elements of adverse possession in cases such as the one before the Court a knowingly wrongful taking. The great weight of authority in this country is to the contrary. Judge Jayne recognized that the rule the Court was following had been criticized as operating to deny relief to the honest possessor and rewarding only the willfully wrongful possessor. 32 N.J. Super., at pp. 426-427.
In criticizing this subjective approach to hostility, Professor Powell states (6 Powell, The Law of Real Property (1965), par. 1015, at pp. 721-725) (citations omitted):
"Do the facts of his possession, and of his conduct as if he were the owner, make immaterial his mistake, or does such a mistake prevent the existence of the prerequisite claim of right? The leading case holding the mistake to be of no importance was French v. Pearce, [8 Conn. 439 (1831)] decided in Connecticut in 1831. In this case the Court said:
`Into the recesses of his [the adverse claimant's] mind, his motives or purposes, his guilt or innocence, no inquiry is made. * * * The very nature of the act (entry and possession) is an assertion of his own title, and the denial of the title of all others. It matters not that the possessor was mistaken, and that had he been better informed, would not have entered on the land; * * *.' This viewpoint has gained increasingly widespread acceptance. The more subjectively oriented view regards the `mistake' as necessarily preventing the existence of the required claim of right. The leading case on this position is Preble v. Me. Cent. R. Co. decided in 1893. [85 Me. 260, 27 A. 149 (1893).] This position is still followed in a few states. [Cf. citation to Predham v. Holfester, 32 N.J. Super. 419, 108 A.2d 458 (1954)]. It has been strongly criticized as unsound historically, inexpedient practically, and as resulting in better treatment for a ruthless wrongdoer than for the honest landowner. *146 [Citing, Bordwell, Desseisin and Adverse Possession, 33 Yale L. Jour. 1, 153 (1923); Darling, Adverse Possession in Boundary Cases, 19 Ore. L. Rev. 117 (1940), at 141; Sternberg, The Element of Hostility in Adverse Possession, 6 Temp. L.Q. 207 (1932); Walsh, Title by Adverse Possession, 31 (1939); Note, 32 N.D.L. Rev. 48 (1956).] Its harshness is substantially mitigated by a judicially accepted presumption of hostility. The problem can sometimes be sidestepped by a finding that a boundary located by mutual agreement, has been acquiesced in for a sufficient time to bar its questioning.
* * * The applied tests are generally objective, the good or bad faith of the possessor being treated as immaterial with respect to the existence of a `claim of right.' The required claim of right against the true owner can suffice even though the possessor mistakenly acknowledges some other outstanding right against which he claims nothing."
3 American Law of Property (Casner ed. 1952), points out that in adverse possession one is dealing with a statute of limitations, stating at § 15.4, pp. 773-777 (citations omitted):
"It is to be expected that all the cases which list the elements necessary to the acquisition of title by adverse possession include that from which the method takes its name. However, a surprisingly large number of them designate it as adverse possession under claim of right or under claim of title. And a very considerable number of cases, and consequently of texts, expressly state that in order to be a source of title, adverse possession must be accompanied by claim of title. A number of decisions go on to state that these terms mean nothing more than that the actions of the occupant must show an intention to appropriate and use the land as his own, or the same as though it were his own, to the exclusion of all others, thus giving the owner a cause of action for his eviction. But most of them make no explanation of the qualifying terms and leave the impression that the occupant must not merely be in possession adversely to the owner but must by word or act proclaim during all the period of the running of the statute that he himself is then the owner.
It is amazing that the courts in declaring these supposed requirements of adverse possession have so completely failed to consider the basic question involved in the acquisition of title by the running of the statute of limitations against the true owner's action of ejectment, viz., whether the true owner had a right of action in ejectment against the wrongful possessor continuing without interruption for the statutory period. In very few cases, in applying these supposed *147 requirements, have the courts discussed the operation of the statute in barring the true owner's action as the sole reason why title arises by adverse possession. Do the courts mean to say in these cases that an actual wrongful possession acquired and maintained without the consent of the true owner is not wrongful and that the owner cannot maintain ejectment against the possessor unless the latter is claiming the title; that actual wrongful possession is not adverse and not subject to the ejectment action if the possessor admits that he made no claim to the title during his years of wrongful possession? If the right of action in ejectment accrues in the owner's favor in such cases, can the courts explain why the statute of limitations restricting the time within which such actions can be brought does not apply? If the statute bars the true owner's action to recover the property can there be any question that his title is extinguished and the possessory title of the wrongful possessor becomes absolute? These are the important questions which must be kept in mind in examining the cases.

* * * * * * * *
* * * The great majority of the cases establish convincingly that the alleged requirements of claim of title and of hostility of possession mean only that the possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner and therefore in actual hostility to him irrespective of the possessor's actual state of mind or intent. * * *"
The text criticizes Myers v. Folkman, supra, at pp. 781-782 (citations omitted):
"In a New Jersey case [Myers v. Folkman, 89 N.J.L. 390, 99 A. 97 (1916)] it was held that possession by building a house which unintentionally encroached on adjoining land was not adverse because of the absence of any assertion of title showing an actual intent to claim ownership of the land so occupied. This position has been taken in a few cases in which the possessor, holding in a way which amounts to possession, not a mere trespass, established by continuous acts of user of an average owner, admits that he entered and occupied believing that the title was in the government, or in some third person, showing conclusively no actual claim of true title in himself. These cases cannot be sustained as the actual hostile character of his possession with actual claim against the owner is established by his conduct, and is entirely consistent with his mistake in believing title to be in the government or other third person. The great weight of authority is against these cases, and it may be said with assurance that practically no authority sustained the position that the claim of right must be a bona fide claim of absolute ownership good against all the world."
*148 As to boundary disputes, the treatise comments in § 15.5, pp. 785-787 (citations omitted):
"The notion that an actual claim of right must exist rather than the claim by wrong demonstrated by the possessor's open and notorious acts of ownership has disappeared for the most part in the great majority of the states where boundary disputes are not involved * * * but the notion lives on in a considerable number of states in cases of boundary disputes in which one of the parties has been in open and notorious possession of the strip of land in dispute up to a fence, hedge, or other physical boundary believing it to be the true line of division, but he admits, on cross-examination usually, that he intended to claim title only to the true line. It should be obvious, here as in the other cases involving this question of the hidden mental attitude of the possessor, that the statute runs against the owner's right to recover from a wrongful possessor from the beginning of his wrongful possession, barring and extinguishing the title of the true owner after the required period irrespective of the possessor's mental attitude, where such possession has not been consented to by the true owner and the possessor has not estopped himself by disclaimer of any right either to the other party personally or in so public a way as to amount to the same thing. The weight of authority strongly supports the position that the mental attitude of the possessor is immaterial, and an actual open and notorious possession which is wrongful since it is without the consent of the owner is necessarily adverse and ripens into title in the usual way where the period of the statute has run. All the cases discussed in the preceding section, which hold that `claim of right' or `claim of title' mean simply an actual adverse possession in fact irrespective of the fact that the possessor knows that he is a wrongdoer and has no actual title other than the title which his wrongful possession gives him and irrespective of his motive, must be added as authorities supporting this rule, as the principle involved is exactly the same."
See Norgard v. Busher, 220 Ore. 297, 349 P.2d 490 (1960) (and authorities cited therein which overruled prior Oregon law, Caufield v. Clark, 17 Ore. 473, 21 P. 443 (1889); King v. Brigham, 23 Ore. 262, 31 P. 601 (1892) that had held that mistake was a bar to asserting adverse possession). 5 Thompson on Real Property (1957 repl.), § 2548, pp. 542-548; 1 Walsh, Law of Real Property (1947), §§ 18-19, pp. 136-159. See also Annot. 80 A.L.R.2d 1171 (1961).
It is recognized by the leading authorities that the basis of adverse possession is a limitation on the time of entry *149 of the true owner. The result of the subjective approach to hostility followed in Predham v. Holfester, supra, is to destroy the effectiveness of the statutory mandate of N.J.S. 2A:14-6. The approach traditionally and consistently taken by our courts to statutes of limitation has been an objective approach. See, e.g. Thorpe v. Corwin, 20 N.J.L. 311, 316 (Sup. Ct. 1844); Markey v. Robert Hall Clothes of Paterson, 27 N.J. Super. 417 (Hudson County Ct. 1953).
The concurring opinion of Justice (then Judge) Francis in Predham v. Holfester, supra, would indicate that he may not have felt that the subjective approach should be followed. He stated at p. 429:
"The statute of limitations is not a club in the hands of a wrongdoer, whether a willful or an unintentional one; it is a prod in the back of the victim, the prod being powered by the conspicuous nature of the adverse use."
Here Mr. Mannillo testified that he knew of the encroachment in 1960. At any time for a period of 20 years after the encroachment was first established, Mr. Mannillo or his predecessors in title would have had an action in ejectment against the defendant.
In none of the opinions in the following cases did it appear that the Court took a subjective approach to hostility although there was no discussion of the question. Plaza v. Flak, 7 N.J. 215 (1951); Gordon v. Lumberville Delaware Bridge Co., 108 N.J.L. 261 (E. & A. 1931); Southmayd v. McLaughlin, 24 N.J. Eq. 181 (Ch. 1873).
For one criticism of the rule followed in Predham, see Rullis v. Jacobi, 79 N.J. Super. 525 (Ch. Div. 1963).
The prior finding by the Court that the defendant's possession of the 15 inch strip extended the entire length of the property for 20 years is not supported by the evidence. Defendant has produced evidence that clearly and convincingly proves (and the Court so finds) that she has been in possession of the 15 inch strip upon which the steps and platform and the concrete walk from the steps to the southwest *150 corner of the house rest for more than 20 years before the institution of this suit and that such possession has been exclusive, continuous, uninterrupted, visible, notorious and against the right and interest of the true owner. However, this Court has no alternative but to follow the existing law as stated by the Appellate Division in Predham v. Holfester, supra. Defendant's claim must be denied because her possession was as a result of mistake rather than an intentional taking.
The motion for a new trial is denied. The findings of fact made at the conclusion of the final hearing will be reaffirmed except insofar as changed herein. Plaintiffs are entitled to a mandatory injunction compelling the defendant to remove the encroachment. Although damages were sought, no proof was adduced in support of such claim. There will be a judgment for the plaintiffs on the counterclaim. The judgment which has been entered in favor of the defendant will be vacated, and judgment will be entered in accordance with the views expressed herein, but without costs.